NOT DESIGNATED FOR PUBLICATION

No. 120,863

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ARCHIE JOSEPH PATRICK DOOLEY,
*Appellant.*

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed November 22, 2019. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, chief deputy county attorney, *Gregory T. Benefiel*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: The district court revoked Archie Joseph Patrick Dooley's probation and imposed his underlying sentence after he failed to report to community corrections for over a month. On appeal, the Kansas Supreme Court remanded the case for the district court to either impose an intermediate sanction under K.S.A. 2013 Supp. 22-3716(c)(1)(C) or (D) or make a specific finding that Dooley absconded and invoke the bypass provision of K.S.A. 2013 Supp. 22-3716(c)(8). *State v. Dooley*, 308 Kan. 641, 654-55, 658, 423 P.3d 469 (2018). After a remand hearing, the district court found Dooley absconded and explicitly invoked the statutory bypass provision. Dooley appeals.

1

In order to invoke the bypass provision in K.S.A. 2013 Supp. 22-3716(c)(8), the State must show, and the district court must find, that the probation violator engaged in some course of action (or inaction) with the conscious intent to hide from or otherwise evade the legal process, such as intentionally avoiding probation supervision by hiding within or secretly leaving the jurisdiction.

The issue was whether Dooley had absconded. He had. He avoided his probation officer when he knew he was being sought. Therefore, it was appropriate for the district court to use the bypass provision and impose the underlying sentence.

Affirmed.

* * *

POWELL, J., concurring:  I join the majority opinion in full but write separately to briefly respond to the dissent. As the dissent correctly states, absconding is more than a failure to report and requires a probationer to have either "fled or hidden himself or deliberately acted to avoid arrest, prosecution, or service of process." *State v. Huckey*, 51 Kan. App. 2d 451, 458, 348 P.3d 997 (2015). I submit the facts in this case support a finding that Dooley hid himself and deliberately acted to avoid arrest.

Dooley had a duty to report and failed to do so. Dooley also had a duty to advise his probation officer of the location of his residence. He did not do that either. Moreover, Dooley admitted that he did not report because he was scared he would be arrested and sent to prison. Those facts together create a permissible inference that Dooley intended to do more than just fail to report. The fact that Dooley may have had a marginal existence, like many probationers do, does not absolve him of his duty to abide by the conditions of his probation. Dooley knew he did not have stable housing, meaning unless he regularly informed his probation officer of his whereabouts, the authorities could not know where

2

he was. That is the same as hiding out. This is not a situation where a probationer fails to report but continues to reside at the same address, theoretically making that probationer relatively easy to find. Here, Dooley did not report, did not have a stable residence, and did not keep authorities informed of his location. Importantly, Dooley admitted he had no intention of reporting. Under these facts, Dooley's intentional failure to report is absconding.

\* \* \*

ATCHESON, J., dissenting:  Defendant Archie J.P. Dooley had his probation transferred from McPherson County to Ford County where he was supposed to stay in a halfway house. The facility turned Dooley away because he didn't have the full fee for admittance. Dooley had no permanent home in Ford County, so he first stayed at a shelter and then a motel in Dodge City. He didn't report his addresses to his probation officer and missed their first meeting. Dooley testified he didn't contact the probation officer because he was scared he would be sent to prison. A month after missing the meeting, Dooley turned himself in.

Following an evidentiary hearing, the McPherson County District Court found Dooley to be an "absconder," revoked his probation, and sent him to prison for that reason, as provided in K.S.A. 2013 Supp. 22-3716(c)(8). But absconding requires more than failing to report, as this court and the Kansas Supreme Court have made clear. See *State v. Dooley*, 308 Kan. 641, 656-57, 423 P.3d 469 (2018) (*Dooley I*); *State v. Huckey*, 51 Kan. App. 2d 451, 457-58, 348 P.3d 997 (2015). Dooley failed to report, and that's a probation violation permitting some sanction. He was not, however, an absconder, so the district court erred in revoking his probation for that reason. This court has compounded the error by affirming that ruling. I respectfully dissent and would reverse the probation revocation and remand for further proceedings.

Dooley's extended saga began in early 2011 when he failed to comply with the Kansas Offender Registration Act, K.S.A. 22-4901 et seq. He was charged, convicted, and in mid-2012 sentenced to serve 120 months in prison for that offense, but the district court placed him on probation. The record indicates Dooley had some rough spots on probation, attributable at least in part to his continuing substance abuse. So in 2013, the district court required Dooley to complete a drug treatment program and to live in a halfway house afterward as conditions of his continued probation.

For reasons not immediately apparent from the record, Dooley's probation was then transferred from McPherson County to Ford County. Dooley had to report to a designated halfway house in Dodge City in November 2013. According to undisputed testimony at the later probation revocation hearings, he showed up. But he had only a portion of the required fee to be admitted to the facility, so he was turned away. As I've indicated, Dooley had no permanent residence in Dodge City. He stayed at a homeless shelter and later a motel in Dodge City. Dooley did not tell his assigned probation officer in Ford County that he didn't get into the halfway house and didn't report his temporary residences. During the second week of December, Dooley had a scheduled meeting with his probation officer. He didn't report. Dooley later testified he didn't communicate with his probation officer because he was scared he would be sent to prison.

After Dooley failed to report in December, the probation officer tried to find him. But the probation officer had no residential address for Dooley and couldn't reach him by telephone. The probation officer did speak with a woman who had been identified as Dooley's then girlfriend. At the later court hearings, Dooley acknowledged the woman told him he needed to contact his probation officer. Dooley conceded he did not.

In early January 2014, about a month after he missed the meeting with his probation officer, Dooley turned himself in. He was taken into custody and returned to McPherson County. The district court held a probation revocation hearing at which

4

Dooley testified. The district court found Dooley to be an absconder and revoked his probation and ordered him to serve the 120-month prison sentence for that reason. See K.S.A. 2013 Supp. 22-3716(c)(8) (If a probationer "absconds from supervision," the district court may revoke the probation and order the probationer to serve the controlling prison sentence without having completed an intermediate sanction.).

Dooley appealed the revocation. This court affirmed. *State v. Dooley*, No. 111,554, 2016 WL 1545172, at *3 (Kan. App. 2016) (unpublished opinion). The Kansas Supreme Court granted review and reversed in *Dooley I*, finding the record on appeal failed to establish what legal standard the district court applied in holding Dooley to be an absconder under K.S.A. 2013 Supp. 22-3716(c)(8). The court remanded to the district court for further proceedings. 308 Kan. at 654-55, 658. The court also generally outlined what constitutes absconding—a discussion to which I return shortly. 308 Kan. at 656-57.

On remand, the district court held another evidentiary hearing in September 2018 at which Dooley again testified. During that hearing, he reiterated that he failed to report to his probation officer because he was scared he would be revoked and incarcerated. Dooley explained that he turned himself in a month later because he had "had enough," although he wasn't clear about exactly what he had enough of. The district court again found Dooley to be an absconder and again revoked his probation. Dooley has appealed the revocation, and that is what we have in front of us.

There do not appear to be any disputed material facts bearing on Dooley's actions and inaction in Dodge City after his probation had been transferred there. Nor has the factual accuracy of his testimony been called into question. The hearing transcript shows Dooley to be taciturn and, perhaps, neither especially insightful nor particularly reflective about his circumstances. Given the undisputed evidence, whether Dooley absconded while he was in Dodge City presents a question of law for us, turning on the meaning of the statutory language in K.S.A. 2013 Supp. 22-3716 (c)(8). See *State v. Turner*, 293

5

Kan. 1085, 1086, 272 P.3d 19 (2012) (interpretation of statute presents question of law); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 258-59, 261 P.3d 943 (2011) (when controlling facts undisputed, issue presents question of law). We owe no deference to the district court's determination that Dooley absconded. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010) (appellate court exercises unlimited review over question of law).

In a probation revocation hearing, the State bears the burden of proving any alleged violation of the terms and conditions by a preponderance of the evidence. *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006). Nobody seriously disputes that Dooley violated his probation when he failed to report to his probation officer in Ford County. And the district court could impose some sanction for that violation. The question here is whether Dooley absconded—a particularly serious transgression permitting a district court to send a violator to prison without having first imposed a lesser sanction. See K.S.A. 2018 Supp. 22-3716(c) (outlining both intermediate sanctions for probation violations and exceptions permitting immediate revocation requiring violator to serve underlying prison sentence).

The Legislature did not define "absconds" as used in K.S.A. 2018 Supp. 22-3716(c)(8). This court filled that definitional void in *Huckey*, holding that within the statutory probation scheme absconding entails more than simply failing to report as required. 51 Kan. App. 2d at 457. Rather, the probationer must have "fled or hidden himself or deliberately acted to avoid arrest, prosecution, or service of process." 51 Kan. App. 2d at 458. That standard reflects the well-recognized meaning of the word "abscond." Black's Law Dictionary 8 (10th ed. 2014) (definition of "abscond"); Webster's New World College Dictionary 5 (5th ed. 2016) (defining "abscond" as "[to] run away and hide, esp. in order to escape the law"). The *Huckey* decision specifically relied on the definition in Black's Law Dictionary. 51 Kan. App. 2d at 455-56.

6

Absent some specialized statutory definition, the words of a statute should be given their ordinary meaning. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 851, 397 P.3d 1205 (2017). And dictionaries (not surprisingly) supply those meanings. 306 Kan. at 851. So *Huckey* rested on sound principles of statutory construction.

In *Dooley I*, the court recognized the same dictionary approach in assessing who should be treated as an absconder. 308 Kan. at 656. In turn, the court cited the Oregon Supreme Court's consideration of absconding under its rule permitting the dismissal of a criminal defendant's appeal if he or she "escapes or absconds from custody or supervision." The Oregon court similarly drew on legal and general dictionaries to define the term. *State v. Robbins*, 345 Or. 28, 33, 36, 188 P.3d 262 (2008). The *Robbins* court concluded that absconding was something more than "fail[ing] to attend one meeting with a probation officer"—the defendant's inaction in that case—or being inaccessible "for a brief period of time" but, rather, required "evad[ing]" the terms of the sentence imposed, including probation requirements, "'by hiding within or secretly leaving [the] jurisdiction.'" 345 Or. at 36 (quoting Webster's Third New Int'l Dictionary 6 [unabridged ed. 2002] [definition of "abscond"]. In *Dooley I*, the court quoted that portion of *Robbins* to outline the test for absconding under K.S.A. 2013 Supp. 22-3716(c)(8). 308 Kan. at 657.

The judicial description of absconding offers two relatively concrete examples of what would not rise to that level (failing to report once or briefly being unlocatable) contrasted with a general characterization of what constitutes necessary conduct to establish a violation (hiding in the jurisdiction or secretly leaving the jurisdiction). Both *Robbins* and *Dooley I* suggest absconding also entails an intent to avoid one's legal obligations under a criminal sentence, presumably by hiding out or fleeing. *Dooley I*, 308 Kan. at 657; *Robbins*, 345 Or. at 36. On the whole, that sounds a lot like the essential holding from *Huckey*: "[T]o show [a probationer has] absconded there must have been

7

evidence that [the probationer] did something more than fail to report." 51 Kan. App. 2d at 455.[*]

[*]Although the Legislature has from time to time revised the scheme in K.S.A. 2018 Supp. 22-3716(c) for sanctioning probation violations, it has not modified the absconder exception in the four years since *Huckey* was published or during the last session since *Dooley I* came out. Had the Legislature wanted something different, it could have amended the statute to allow a district court to revoke the probation of a defendant who fails to initially report or who fails to report for more than 30 or 60 days. But the Legislature hasn't done so.

Dooley's circumstances fall well within what *Dooley I* says should not be treated as absconding. Dooley failed to report but he didn't hide or secretly leave the jurisdiction. Nobody contends Dooley left Ford County—secretly or otherwise—in late 2013 or in January 2014 before he turned himself in. Although Dooley indisputably failed to report to his probation officer once in December 2013, that's a failure to report, not absconding.

Like a lot of probationers, Dooley had a fairly marginal existence. When the halfway house refused him a place to stay, he was adrift. He had no regular or permanent residence in Dodge City, so he did what marginal people do in shuttling from shelters to inexpensive motels to other transient living arrangements. Dooley wasn't hiding out; he was simply trying to get along. But that made Dooley difficult to locate precisely because he had neither a regular place of employment nor an established residence in Ford County. Dooley should have reported to his probation officer when he couldn't get in at the halfway house and later when his girlfriend conveyed the probation officer's message. But those, too, are at most failures to report—not secretive evasions that mark absconding.

The facts nestle snuggly with the examples *Dooley I* incorporated from *Robbins* of what falls well short of absconding: Dooley missed one scheduled meeting with his probation officer, and he was inaccessible for a brief period (barely a month) from then

8

until he voluntarily showed up, expecting to be taken into custody. Given the record evidence, Dooley was not an absconder, and the district court erred as a matter of law in revoking his probation for that reason.

The district court cited several reasons Dooley should be considered an absconder. The fragility of those reasons simply underscores the erroneous conclusion the district court reached:

• The district court relied on Dooley's purported admission at the first revocation hearing to being an absconder. But that's factually and legally amiss. At the first hearing, the prosecutor asked Dooley: "You said that the reason you absconded was because you were scared?" To which Dooley responded, "Yes." That's not an admission of absconding. The term appears as a supposition in a question about why Dooley didn't show up for the scheduled meeting or otherwise communicate with his probation officer. Moreover, whether Dooley absconded requires a legal opinion or conclusion he wasn't qualified to provide. Dooley could testify to what he did or didn't do. In *Dooley I*, the court specifically directed Dooley's stipulation or agreement at the first hearing that he absconded couldn't be used to support a legal finding of absconding. 308 Kan. at 657-58. In this respect, the district court appears to have done on remand exactly what it was instructed not to do.

• Dooley admitted he intentionally failed to report. Well, yes he did. And a failure to report (intentional or not) remains simply a failure to report. Many, if not most, failures to report probably are intentional rather than accidental. In other words, a probationer makes a deliberate choice not to show up rather than missing a meeting because he or she was mistaken about the date. Intentionally failing to report is neither absconding nor circumstantial evidence of absconding.

• Dooley admitted he failed to report to his probation officer because he was scared. Again, that's correct. But Dooley's motive in not reporting doesn't convert the failure into absconding. He didn't hide or secretly flee. And he remained unaccounted for only briefly. The evidence failed to show any indicia of absconding.

• Dooley turned himself in because, as he testified, he had had enough and believed a warrant likely had been issued for him. The district court's logic seems especially slippery here. The significant point would seem to be that Dooley, in fact, came in on his own rather than waiting to be picked up on a warrant. A probationer's self-surrender within a month after failing to report for a scheduled meeting is contrary to the extended secretive evasion that marks absconding. So I am mystified by the district court's reliance on conduct inconsistent with absconding, as outlined in *Dooley I*, to support a finding of absconding. Dooley's enigmatic reference to having had enough doesn't lend substance to the district court's otherwise porous reasoning.

I would reverse the district court's finding that Dooley absconded and remand for further proceedings on the probation revocation.